**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

JEROME FRANCIS*,*

    **Plaintiff**,

           **v.**                    **CIVIL NO.** 11-1876 (FAB)

CARIBBEAN TRANSPORT, LTD., *et. als.*,

    **Defendants.**

**OPINION AND ORDER**[1]

BESOSA, District Judge.

    Before the Court are two motions: defendants' G&W Transport Ltd. ("G&W") and Caribbean Transport Ltd. ("CTL") motion for summary judgment, (Docket No. 30), and plaintiff Jerome Francis's ("Francis") motion to strike various exhibits introduced by defendants in support of their motion for summary judgment. (Docket No. 53.) After reviewing the record and relevant law, the Court **GRANTS IN PART** and **DENIES IN PART** plaintiff's motion to strike and **GRANTS** defendants' motion for summary judgment.

**I.   Procedural History**

    Plaintiff Francis filed an initial complaint on September 6, 2011 (Docket No. 1), and an amended complaint on December 15, 2011 (Docket No. 5), claiming damages as a result of defendants' alleged

---

[1] Justin Rowinsky, a second-year student at the Georgetown University Law Center, assisted in the preparation of this Opinion and Order.

negligence.  Plaintiff avers that his injury was "due to the fault
and/or negligence of Defendants, its agents, servants, and/or
employees."  (Docket No. 5 at ¶ 13.)  Plaintiff seeks relief
pursuant to 46 U.S.C. § 30104 (2012) ("The Jones Act") and general
maritime law.  (Docket No. 5 at ¶¶ 16, 22.)

On February 16, 2012, defendants filed a motion for summary
judgment, (Docket No. 30), a statement of uncontested material
facts, (Docket No. 31), and a memorandum in support of the summary
judgment motion.  (Docket No. 32.)  Defendants do not address the
merits of plaintiff's claims, but instead allege that this Court
lacks jurisdiction over this case.  (Docket No. 32 at 2.)
Alternatively, defendants rely on the doctrine of *forum non
conveniens* to justify dismissing plaintiff's complaint.  Id. at 14.
On July 20, 2012,[2] plaintiff filed a motion to strike defendants'
motion for summary judgment based on the inadmissibility of various
documents used by defendants as evidence supporting their motion.
(Docket No. 53.)  Plaintiff also filed a response in opposition to
defendants' motion for summary judgment, (Docket No. 54), and a
statement of uncontested facts in support of plaintiff's response
in opposition.  (Docket Nos. 56, 57, & 60.)  Defendants filed a

---

[2] On May 14, 2012, plaintiff was granted an extension of discovery
in order to present a brief in opposition to defendants' motion for
summary judgment.  (Docket No. 50.)

response in opposition to plaintiff's motion to strike on July 30, 2012 (Docket No. 62), and included two additional sworn affidavits in support of their motion for summary judgment. (Docket Nos. 62-1, 63-1.)

## II.  Plaintiff's Motion to Strike

Plaintiff filed a motion to strike various documents included as part of defendants' motion for summary judgment. (Docket No. 53.)  The Court will rule on each contested exhibit before establishing the findings of fact that are necessary for evaluating defendants' motion for summary judgment.  Plaintiff objects to defendants' exhibits on the grounds that (1) they are inadmissible hearsay based on Federal Rule of Civil Procedure 56, or (2) they are not properly authenticated Foreign Public Documents pursuant to Federal Rule of Evidence 902.  (Docket No. 53 at 3, 7.)  The Court will analyze each exhibit or set of exhibits based on the plaintiff's specific objections.

### A.   Objection to Exhibits Based on Inadmissible Hearsay

#### i.   Legal Standard

The authenticity and admissibility of evidence at the summary judgment stage is based on the interplay of Federal Rule of Civil Procedure 56 ("Rule 56") and Federal Rules of Evidence 901 and 902.  See, e.g., Rojas-Ramirez v. BMJ Foods, Inc., 2011 WL 693621 at * 5 (D.P.R. Feb. 24, 2011).  There is established

precedent by the First Circuit Court of Appeals that focuses on Rule 56's requirement that evidence used for adjudicating a summary judgment motion must be admissible at trial.  E.g., Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000) ("Documents supporting or opposing summary judgment must be properly authenticated.") (citing Rule 56(e)).

Rule 56, however, was amended in 2010.  As the Advisory Committee Notes from the 2010 amendments state, 56(c) "is new," and "[s]ubdivision (c)(4) carries forward some of the provisions of former subdivision (e)(1)."  Fed.R.Civ.P. advisory committee's note to the 2010 amendment (subdivision c(4)). Moreover, the Notes state that if exhibits are challenged, "[t]he burden is on the proponent to show that the material is admissible as presented *or to explain the admissible form that is anticipated*."  Id. (emphasis added); see also Santos v. Nogueras, 2012 WL 2871108 at *4 (D.P.R. July 11, 2012) (noting that in lieu of the 2010 amendment to Rule 56, "evidence need not necessarily be presented in an admissible form at summary judgment.").  Based on the relaxed, newer Rule 56 standard, the Court now examines each of plaintiff's objections to the defendants' exhibits in support of their motion for summary judgment.

ii.  **Plaintiff's Specific Objections**

Plaintiff avers that defendants' exhibits 11, 17, 12 & 13, 14 and 16 do not satisfy Rule 56 and are therefore inadmissible hearsay.  The Court will address each objection in turn.

a.  **Exhibit 11**

Plaintiff moves to strike defendants' exhibit 11, a document signed by the President of Nieves Maritime Corp. ("Nieves") that states that Nieves has served as CTL's "ship agent" for the past 32 years, because it is not attached to a sworn affidavit.  (Docket No. 31-11.)  Defendants stated no objection to plaintiff's request to strike Docket No. 31 at ¶ 17 and the exhibits in support of it, including exhibit 11.  (Docket No. 62 at ¶ 17.)  Accordingly, the Court **GRANTS** plaintiff's motion to strike exhibit 11.

b.  **Exhibit 17**

Plaintiff also moves to strike defendants' exhibit 17, a memorandum prepared by a Tortola, British Virgin Islands ("BVI") law firm providing a legal opinion on whether the BVI courts are available to the plaintiff should he choose to pursue his claims there after dismissal from this Court.  (Docket No. 53 at 4.)  Plaintiff argues that the memorandum is inadmissible hearsay, but the Court disagrees.

O'Neal Webster is a BVI law firm whose legal memorandum includes their contact information and the signature of the lawyer who prepared the legal memorandum, Paul B. Dennis. (Docket No. 31-17.)  Moreover, defendants submitted an affidavit signed by Dennis under penalty of perjury that declares he is admitted to the practice of law in BVI and that he prepared exhibit 17 "to assist the Court in its consideration" of this case. (Docket No. 63-1.)  Therefore, the Court **DENIES** plaintiff's motion to strike Exhibit 17.

### c.    Exhibits 12 & 13

Plaintiff argues that exhibits 12 & 13, letters sent to plaintiff's home that informed him of his employment with CTL and related details such as his salary, are inadmissible hearsay because they do not contain a an affidavit or unsworn statement that authenticates them.  (Docket No. 53 at 5.)  Both documents were signed by CTL employees:  Lorraine Stoutt, the Managing Director, and Garvin Stoutt, the Owner.  Defendants included an unsworn declaration under penalty of perjury in which Lorraine Stoutt stated that she is "the custodian of the original documents corresponding to Exhibits . . . 12-13," and that exhibits "12-13 are true and exact copies of the original documents under my custody."  (Docket No. 62-1 at ¶¶ 6-7.)  Because Rule 56 requires

nothing more, the Court **DENIES** plaintiff's motion to strike exhibits 12 and 13.

### d.   Exhibit 14

Plaintiff moves to strike defendants' Exhibit 14 for lack of authentication, and the Court agrees. Defendants claim that the exhibit is an excerpt of Warren's Pride's vessel log, and that the log includes the events of December 10, 2008, at issue in this dispute. (Docket No. 31-14 at 2.) The initials or signature at the bottom right of the page, however, are illegible to the Court. The log does not indicate who signed it, nor does the defendants' motion mention the author of the log. Based on these factors, the Court **GRANTS** plaintiff's motion to strike Exhibit 14.

### e.   Exhibit 16

Plaintiff objects to defendants' exhibit 16, a set of 18 photographs allegedly taken by the BVI police at the scene of the incident pursuant to their police report. Plaintiff argues that the pictures lack any certification and are therefore inadmissible evidence. The Court agrees.

First, pictures 1-16 were all taken during daylight, and have a white number in the upper-right corner, corresponding to the picture number articulated in the caption below. Pictures 17 and 18, however, lack this number in the upper-

right corner and  appear to have been taken at the dock during night.  These are unexplained discrepancies.  Second, the police report (exhibit 15) does not mention any of the photographs, and can therefore not be used to corroborate that the pictures were in fact taken by the police.  Finally, while picture 1 clearly shows a ship with the "Warren's Pride" name and registry of Panama displayed on the hull, none of the other pictures clearly show that they are in fact from the interior of Warren's Pride, or were taken right after the incident in question.  The pictures lack any time or date information, and there are no other identifying characteristics.  The Court therefore **GRANTS** plaintiff's motion to strike Exhibit 16.

## B. Objections Based on Unauthenticated Foreign Public Documents

### i. Legal Standard

Federal Rule of Evidence 901 requires authentication of all exhibits in order "to support a finding that the item is what the proponent [of the evidence] claims it is." Fed.R.Evid. 901(a).  Therefore, "the standard for authentication, and hence for admissibility, is one of reasonable likelihood." United States v. Holmquist, 36 F.3d 154, 168 (1st Cir. 1994) (holding also that "reasonable likelihood" does not require "the proponent of the evidence to rule out all possibilities

inconsistent with authenticity"). Rule 901(b)(4) explicitly permits the consideration of an exhibit's "appearance, contents, substance, internal patterns, or other characteristics of the item, taken together with all the circumstances." Fed.R.Evid. 901(b)(4).

Rule 902 prescribes the standard for evidence that is self-authenticating. Foreign public documents, for example, are self-authenticating when they are "signed or attested by a person who is authorized by a foreign country's law to do so." Id. In addition, the document "must be accompanied by a final certification" made by a United States official. Id. Even without this final certification, however, a court may treat a foreign public document as "presumptively authentic" for "good cause" if "all parties have been given a reasonable opportunity to investigate the document's authenticity and accuracy." Fed.R.Evid. 902(3)(A). A court can "more readily" find good cause when "the adversary, despite a fair chance to examine into the document's bona fides, casts no serious doubt on its authenticity." United States v. De Jongh, 937 F.2d 1, 5 (1st Cir. 1991).

A so-called "Foreign Public Document" does not need to be self-authenticating under Rule 902 in order to be admissible; Rule 902 is simply another method of authenticating a document in addition to the "reasonable likelihood" requirement of Rule 901. See Minh Tu v. Mutual Life Ins. Co. of New York, 136 F.3d 77, 81

(1st Cir. 1998) (distinguishing authentication pursuant to Rule 901
from self-authentication pursuant to Rule 902); see also United
States v. Pluta, 176 F.3d 43, 49-50 (2d Cir. 1999) ("A document
which is of a type that could be self-authenticating but which does
not meet all the requirements of Rule 902 may nonetheless be
authenticated by any means appropriate under Rule 901.").
Therefore, plaintiff's contention that documents that fail to
satisfy Rule 902(3) are inadmissible is incorrect.   See Samad
Brothers, Inc. v. Bokara Rug Co. Inc., 2012 WL 1604849 at *3
(S.D.N.Y. May 8, 2010) (noting that "Rule 902(3) is not a pre-
condition to the admission of evidence").   The Court now turns to
plaintiff's specific objections.

### ii.   Foreign Public Documents; Exhibits 1-7 & 15

Plaintiff challenges defendants' exhibits 1-7 & 15
based on Federal Rules of Evidence 901 and 902.   (Docket No. 53
at 7.)   Although plaintiff appears to argue that Rule 902 is a
necessary precondition to admit foreign public documents, he is
incorrect.   The Court may also consider whether they are
authenticated pursuant to the "reasonable likelihood" standard of
Rule 901.   See Holmquist, 36 F.3d at 167 (holding that "reasonable
likelihood" is based on a number of factors including the
document's "contents, substance, internal patterns . . . taken in
conjunction with the circumstances").

> **a.  Rule  902(3):  Self-Authenticating  Foreign Public Documents**

The Court first addresses whether exhibits 1-7 & 15 are self-authenticating.  As plaintiff correctly observes, Rule 902(3) requires a certification by a United States official. There is a "savings clause," however, which permits the Court to relax the authentication requirements if the proponent of the evidence can demonstrate it was "unable to satisfy the rule's requirements . . . despite [] reasonable efforts."  Starski v. Kirzhnev, 682 F.3d 51, 54 (1st Cir. 2012).  Defendants' exhibits were introduced on February 16, 2012, (Docket No. 31), and plaintiff's motion to strike was filed five months later, on July 20, 2012, (Docket No. 53).  Plaintiff was also granted an extension of time in order to conduct further discovery to support his brief in opposition to defendants' motion for summary judgment. (Docket No. 50.)  Even though five months was ample opportunity for plaintiff to "investigate the document's authenticity and accuracy," plaintiff only raises a procedural challenge. Fed.R.Evid. 902(3); see also De Jongh, 937 F.2d at 5.  Despite a lengthy period of time, however, Rule 902(3)'s requirements are quite clear, and the burden is on defendants to demonstrate good cause.  Because these exhibits are not self-authenticating pursuant

to Rule 902, the Court now addresses whether they pass Rule 901's standard.

**b.     Rule 901: Reasonable Likelihood of Authenticity**

Exhibits 1-7 & 15 all pass the "reasonable likelihood" standard for authenticity pursuant to Rule 901. Exhibit 1 is plaintiff's passport, and there is no reason to doubt its validity.   Plaintiff also admits that he is a Jamaican national. (Docket No. 56 at 1.)  Exhibits 2-7 are various business documents illustrating that defendants (CTL & G&W) are incorporated in BVI, have trade licenses issued in BVI, and Warren's Pride is registered in Panama and flies the Panamanian flag.  Each of those documents contains an official seal and signature of the relevant foreign official.  In addition, the Court looks to the declarations of the Stoutt family taken under penalty of perjury.  (Docket No. 31-8, 31-9, 31-10.)  When the declarations and exhibits are viewed together in context, they sufficiently corroborate one another to establish a reasonable likelihood of authenticity. See Holmquist, 36 F.3d at 167 (noting the various factors that "provide sufficient indicia of reliability to permit a finding that [the documents are] authentic").

Finally, exhibit 15 also contains enough indicia of reliability for the Court to conclude confidently that it is authentic.  It is a two-page BVI Police Force's Police

Report, documenting the immediate aftermath of plaintiff's alleged hand injury and altercation onboard Warren's Pride.  It is signed by the Chief Inspector of the police department, Michael Donovan, and is dated and stamped.  It also contains an identification number that permits direct and easy authentication with the BVI Police.  Plaintiff has not cast any doubt on the validity of exhibit 15, and the Court finds it reasonably likely that the document is authentic pursuant to Rule 901.

In conclusion, the Court **DENIES** plaintiff's motion to strike defendants' exhibits 1-7 & 15 because of the reasonable likelihood that they are authentic.

## III. Defendants' Motion for Summary Judgment

### A.    Statement of Undisputed Facts

Defendants CTL and G&W are incorporated in BVI.  (Docket Nos. 31-3, 31-6.)  The three directors and all stockholders of both companies are domiciled in Tortola.  (Docket Nos. 31-8, 31-9, 31-10 & Docket No. 56 at 1.)  Defendants' administrative and accounting offices are in Tortola, BVI, and defendants do not own any real estate in Puerto Rico.  (Docket Nos. 31-8, 31-9, 31-10.)  Defendants leased a trailer at Pier 10 in San Juan, Puerto Rico, for the monthly rent of $500 from 2006-2011, and paid three employees during the same time period:  a secretary, a "cargo receiver," and a supervisor.  (Docket No. 56-2 at 6, Docket No. 56-

3.)  Since 2006, CTL has derived an estimated "20% of its gross revenues for the period between 2006-08, and 10-15% for the period between 2010-2012 . . . from its Puerto Rico operations." (Docket No. 56-2 at 3.)

The M/V Warren's Pride is registered in Panama, and flies the Panamanian flag.  (Docket No. 31-2.)  Warren's Pride made monthly trips to Puerto Rico within the past year, but not "on an alternating weekly basis."  (Docket No. 56-1 at 35-36.)  CTL advertises in Puerto Rico and admitted that it maintains a "base of operations" here, but has not defended a lawsuit in Puerto Rico in the past ten years.  (Docket No. 56-2 at 15, Docket No. 56-1 at 34, 35.

Plaintiff Francis is a Jamaican national. (Docket No. 31-1 & Docket No. 56 at 1.)  CTL employed plaintiff as a cook on board the M/V Warren's Pride beginning on June 20, 2008. (Docket No. 31-13.)  Plaintiff alleges, and defendants do not dispute, that on December 10, 2008, the Chief Engineer of Warren's Pride swung an axe "viciously and without provocation" at plaintiff's head.  (Docket No. 5 at ¶ 12.)  Plaintiff shielded his head with his left arm, and the axe's alleged damage to that arm is the basis of the relief he is now seeking.  Id.  Warren's Pride was docked in Tortola on the date of the accident, and plaintiff was

treated at "Peebles Hospital" for his injuries.  (Docket No. 31-15 at 1.)

### B.    Legal Standard for Assessing Maritime Jurisdiction

Plaintiff claims damages pursuant to both the Jones Act and general maritime law, and invokes the admiralty subject matter jurisdiction of the Court.  (Docket No. 5 at 1, 2, 6.)  Because plaintiff is seeking relief in a federal court, both claims "present the narrow issue, whether the maritime law of the United States may be applied in an action involving an injury" sustained by a foreign citizen onboard a foreign ship that had embarked from San Juan, Puerto Rico.  Romero v. Int. Terminal Operating Co., 358 U.S. 354, 381 (1959).  The Court will analyze both of plaintiff's claims simultaneously based on "the similarity in purpose and function of the Jones Act and the general maritime principles of compensation for personal injury."  Id. at 382.

The Supreme Court emphatically rejected an interpretation of the Jones Act that would confer a cause of action in a federal court on "any seaman who shall suffer personal injury in the course of his employment."  Lauritzen v. Larsen, 345 U.S. 571, 576 (1953).  If every country exercised jurisdiction over maritime commerce that had only minimal contacts with the forum, "a multiplicity of conflicting and overlapping burdens would blight international carriage by sea."  Id. at 581.  To prevent this burden, courts must

weigh "the significance of one or more connecting factors between the shipping transaction being regulated and the national interest served by the assertion of authority" in deciding whether to exercise jurisdiction over a maritime case.  Id. at 582.  The Lauritzen Court enumerated seven "connecting factors" to be considered:  (1) the place of the wrongful act, (2) where the ship is registered (the "law of the flag"), (3) the allegiance of the plaintiff, (4) the allegiance of the defendant(s), (5) the location where the contract was signed, (6) the degree of accessibility of a foreign forum, and (7) the law of the court's forum.  Id. at 583-592.  The Supreme Court later added an eighth factor, the "shipowner's base of operations."  Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 309 (1970).  The list of factors is not "intended as exhaustive," and the factors must be "considered in light of the national interest served by the assertion of Jones Act jurisdiction."  Id.

### C.   Application of the Eight Factors to the Current Case

Both the First Circuit Court of Appeals and the District of Puerto Rico have applied those eight enumerated factors to dismiss a plaintiff seaman's claims pursuant to the Jones Act and general maritime law.  See Kukias v. Candris Lines, Inc., 839 F.2d 860, 862 (1st Cir. 1988); Theordros v. Farida Shipping, Inc., 762

F.Supp. 10, 12 (D.P.R. 1991).  The Court now applies those eight factors to the current case.

i.    **Place of the alleged act**

Even though the Supreme Court listed the geographical location of the alleged tortious act first, it also acknowledged that jurisdiction "should not depend on the wholly fortuitous circumstance of the place of injury." Romero, 358 U.S. at 384; see also Kukias, 839 F.2d at 862 (holding that "this first factor is of little significance.").  In this case, defendants provide evidence demonstrating that the alleged incident cited by plaintiff occurred while Warren's Pride was docked at Port Purcell in Tortola, BVI.  (Docket No. 31-15.)  The incident cited by plaintiff had no connection with Puerto Rico, and therefore counsels against the Court retaining jurisdiction over the case.

ii.   **Law of the Flag**

The ship's flag is of "cardinal importance" in evaluating jurisdiction, because a ship "is deemed to be a part of the territory of that sovereignty (whose flag it flies)," and a ship does not "lose that character when in navigable waters" of another country. Lauritzen, 345 U.S. at 585 (citing the fact that the ship on which the plaintiff was injured was registered in Denmark and flew the Danish flag); see also Kukias, 839 F.2d at 862 (citing the fact that the ship was registered in Panama and flew

the Panamanian flag).  Warren's Pride was registered in Panama and
flew the Panamanian flag at the time of the alleged incident.
(Docket No. 31-2.)  Warren's Pride remains registered in Panama
today.  Id.  Therefore, this second factor weighs against retaining
jurisdiction in this case.

### iii. Allegiance of the Plaintiff

Even though plaintiff did not indicate his
nationality or domicile in either the original or amended
complaint, defendants included a copy of plaintiff's passport as
evidence proving that he is a Jamaican citizen.  (Docket No. 31-1.)
Plaintiff later admitted he is Jamaican.  (Docket No. 56 at 1.)

### iv. Allegiance of the Defendants

Both the owner (G&W) and operator (CTL) of Warren's
Pride are BVI companies.  (Docket No. 31-3, 31-4, 31-5, 31-6, 31-
7.)  Both companies share the same three directors (who are
domiciled in Tortola, BVI), and every stockholder of both companies
is also domiciled in Tortola, BVI.  (Docket No. 31-8, 31-9, 31-10.)
There is no need to "look through the facade of foreign
registration and incorporation" to find the true owner and
operators, because both defendants are clearly BVI corporations.
Kukias, 830 F.2d at 862 (internal quotation omitted).  Therefore,
this dispute is between two foreign parties arising from an
incident that took place in a foreign country.

### v.   Location Where the Contract was Signed

Defendants admitted that "parties did not sign seaman's articles or any other kind of service agreement." (Docket No. 32 at 12.)  Even if they had, this fifth factor "is given little weight" in deciding whether to exercise jurisdiction. Kukias, 839 F.2d at 862.  Whether the contract includes a particular choice of law provision can be relevant, but the Court must first establish jurisdiction before deciding which law to apply. See id.  Therefore, the Court will not include this fifth factor in its determination.

### vi.  Accessibility of a Foreign Forum

Defendants submitted a BVI law firm's legal memorandum that states that the plaintiff can bring his complaint in the BVI courts.  (Docket No. 31-17.)  Although plaintiff's potential claim pursuant to BVI's Merchant Shipping Act is time-barred, the statute of limitations defense "is not automatic and has to be specifically pleaded.  Therefore, [defendants] would be well within their rights not to plead" that defense, and plaintiff's claim could proceed.  Id. at 2.  Moreover, BVI courts have "the discretion to extend the relevant limitation period to such extent and on such conditions as [they] think[] fit."  Id. Plaintiff also has the option of pleading "an ordinary civil claim in contract or tort," in which case plaintiff has until

December 11, 2013, to file his complaint.  Id.  Therefore, "there is no doubt that a foreign forum is available."  Kukias, 839 F.2d at 863.  This is another factor counseling against the Court retaining jurisdiction over the case.

### vii. Law of Puerto Rico

Because the defendants have been made a party to the case "involuntarily," the law of the forum factor "counts for little."  See Kukias, 839 F.2d at 863; Theordros, 762 F.Supp. at 13.

### viii.      Defendants' Base of Operations

The final factor enumerated by the Supreme Court to be weighed by courts is the most contentious, with both plaintiff and defendants offering evidence in support of their respective positions.  Defendants' administrative offices, accounting offices, and their operations are all located in, and are dictated from, Tortola, BVI.  (Docket No. 31-8, 31-9, 31-10.) Defendants are not registered corporations of any United States state or territory.  Id.

Plaintiff introduced evidence in his opposition to defendants' motion for summary judgment to demonstrate the defendants' alleged "substantial and continuing contacts with the United States."  (Docket No. 54 at 10.)  Defendants admitted that an estimated 20% of CTL's gross revenues for the 2006-2008 time

period and 10-15% of CTL's gross revenues from 2010 to 2012 "were derived from its Puerto Rico operations." (Docket No. 56-2 at 10.) CTL also admitted that they lease a trailer at Pier 10 in San Juan, Puerto Rico, and pay $500 in rent for it. Id. at 6. CTL admitted that Warren's Pride makes "monthly trips to ports of call in Puerto Rico," but denied that the frequency of those trips is "on an alternating weekly basis." (Docket No. 56-1 at 36.) CTL admits that they advertise their "products and/or services in Puerto Rico." Id. at 34.[3] Finally, defendants responded affirmatively that they maintain a "base of operations" in Puerto Rico. (Docket No. 56-2 at 36-37.)

Although the Court recognizes that plaintiff has highlighted a series of contacts between defendants and Puerto Rico, it is not enough to conclude that defendants have a "base of

---

[3] Plaintiff also includes several other items in support of his contention that defendants have a "base of operations" in, and substantial contacts with, Puerto Rico. These include payments made to various companies for items such as fuel, storage, and "stevedoring services." (Docket No. 56 at 8-9.) Plaintiff also highlights that defendants paid money to "U.S. Customs and Border Protection in Puerto Rico." Id. at 9. The Court acknowledges those items of evidence but believes that the items already identified are the most material and germane to considering the motion for summary judgment.

operations" in Puerto Rico.[4]  The present factual situation is in stark contrast to a case where the employer had two offices in the United States, an American citizen owned 95% of the employer's stock, and the employer's "entire income is from cargo either originating or terminating in the United States."  Rhoditis, 398 U.S. at 307-08.  The Rhotitis Court concluded that those facts were sufficient to outweigh other facts that counseled against retaining jurisdiction over the case.  Id. at 308 (noting that "the ship's flag is Greek; the injured seaman is Greek; the employment contract is Greek; and there is a foreign forum available to the injured seaman").  In contrast to an "entire income," defendants derived only 20% of their revenue from Puerto Rico.  Moreover, all other factors cited by the Rhoditis Court counsel against the Court retaining jurisdiction in the present dispute.

        Moreover, even though whether a defendant has a "base of operations" in the forum state is "a significant factor . . . , courts must continue to examine the full range of factors relevant to choice-of-law determinations and may decline to apply the Jones Act even where a shipowner had substantial domestic contacts."  Theordros, 762 F.Supp. at 14 (citing Kukias, 839 F.2d

---

[4] Evaluating whether a defendant had a "base of operations" in a forum state is for the Court to decide.  Defendants admitting that fact in response to an interrogatory is not, in itself, dispositive.

at 864).  Defendants clearly have financial and logistical contacts with Puerto Rico, but not a "base of operations" as articulated by the Supreme Court.

In conclusion, of the eight factors used to determine whether jurisdiction exists, two are not relevant (where the contract was signed and the law of the forum); five counsel against retaining jurisdiction pursuant to the Jones Act and general maritime law (place of the incident, registry of the ship, allegiance of the plaintiff, allegiance of the defendants, accessibility of a foreign forum); and one is fairly split (defendants have contacts with Puerto Rico, but not enough to establish a "base of operations").  Accordingly, defendants motion for summary judgment is **GRANTED**.[5]

## V.   Conclusion

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** plaintiff's motion to strike; defendants' exhibits 11, 14 and 16 are stricken from the record.  Because the Court lacks jurisdiction over plaintiff's claims pursuant to the Jones Act and general maritime law, the Court **GRANTS** defendants' motion for summary judgment.  This case is **DISMISSED with prejudice.**

---

[5] Because the Court has disposed of the case on defendants' primary argument, lack of jurisdiction, it will not address defendants' secondary argument of *forum non conviens*.

Civil No. 11-1876 (FAB)                                                      24

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 6, 2012.

                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE